**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**DAMEON SPENCER**                                                          **PLAINTIFF**

**v.**                               **CASE NO. 5:08cv00235 BSM**

**FLOYD WHITE, Individually and in His**
**Official Capacity as Sheriff of Chicot County,**
**Arkansas; RON NICHOLS, Individually and in**
**His Official Capacity as Sheriff of Chicot County;**
**and MARK CASHION, Individually and in His**
**Capacity as Keeper of the Jail for the Arkansas**
**Department of Corrections**                                              **DEFENDANTS**

## ORDER

Plaintiff Dameon Spencer ("Spencer") is suing defendants Floyd White ("White"),

individually and in his official capacity as Sheriff of Chicot County, Arkansas; Ron Nichols

("Nichols"), individually and in his official capacity as Sheriff of Chicot County, Arkansas;

and Mark Cashion ("Cashion"), individually and in his official capacity as keeper of the jail

for the Arkansas Department of Corrections ("ADC").  Spencer states that defendants

violated his constitutional rights by detaining him for 43 days before allowing him to appear

before a judge.

Spencer has moved for summary judgment against defendants on the issue of liability.

[Doc. No. 26].  Cashion is claiming sovereign immunity and qualified immunity and has

moved for summary judgment on the underlying issues, maintaining that, as a matter of law,

he did not violate Spencer's constitutional rights.  [Doc. No. 29].  White and Nichols are not

seeking immunity and have declined to request summary judgment; however, they claim that

Spencer's motion should be denied because there are genuine issues of material fact in dispute, and therefore summary judgment is not appropriate.  [Doc. No. 37].

For the reasons set forth below, Spencer's motion for summary judgment is denied. Cashion's motion for summary judgment is granted.

## I.  BACKGROUND

On October 30, 2006, Spencer was arrested for financial identity fraud by Rose Weathers ("Officer Weathers") of the Dermott, Arkansas Police Department.  Plaintiff's response to separate defendant's counter-statement of undisputed material facts (Doc. No. 35) ("pltf.'s resp. to def.'s sof"), ¶¶ 2, 4.  The arrest was made pursuant to an arrest warrant. *Id.*   At the time of Spencer's arrest, there were four other outstanding warrants; all for failures to appear in court.  *Id.* at ¶ 3.  Spencer was taken to the Dermott police station and informed that he was being charged with financial identity fraud.  *Id.* at ¶ 5; plaintiff's statement of undisputed facts (Doc. No. 28) ("pltf.'s sof"), Ex. A., Dameon Spencer deposition ("Spencer depo."), 23:21-24:1.  He remained at the Dermott police station while Dermott police contacted the Chicot County Sheriff's Office requesting permission to use one of the beds assigned to Chicot County at the ADC's Delta Regional Unit ("Delta Regional Unit").  Pltf.'s resp. to def.'s sof, ¶ 6.

Chicot County has an inmate housing agreement with the ADC.  *See* separate defendant's counter-statement of facts (Doc. No. 31) ("def.'s sof"), Ex. E.  This agreement provides that, for a negotiated fee, Chicot County can use 16 of the beds at the Delta Regional Unit to house its detainees.  Pltf.'s sof, Ex. D, Mark Cashion deposition ("Cashion

depo."), 7:20-21; *see also* def.'s sof, Ex. E.  Chicot County  permits cities within its borders

to use its beds at Delta Regional.  Pltf.'s sof, Ex. B, Floyd White deposition (White depo."),

7:7-19.  To use one of Chicot County's beds, a city must contact the Chicot County Sheriff's

Office and make a request.  Pltf.'s sof, Ex. B, White depo., 7:7-19.  After approval, Chicot

County notifies the Delta Regional Unit that a city inmate will be using one of the county

beds.  *Id.*

When Spencer was arrested, the Chicot County Sheriff's Office granted Dermott's

request to house Spencer at the Delta Regional Unit and sent a fax to the Delta Regional Unit

notifying it that Dermott police would be booking an arrestee for a bed reserved for Chicot

County.  Pltf.'s resp. to def.'s sof, ¶¶ 7-9.  Officer Weathers then transported Spencer to the

Delta Regional Unit.  *Id.* at ¶ 7.  An ADC employee booked Spencer into the Delta Regional

Unit at approximately 11:30 a.m. on October 30, 2006.  *Id.* at ¶ 10.

The parties disagree as to the events that followed.  Spencer maintains that he did not

receive his initial appearance until December 11, 2006.  Complaint, ¶ 4.  Cashion, White, and

Nichols all assert that there is evidence suggesting Spencer received an initial appearance

before a judge by phone on October 30, 2006, and his bond was set at $20,000.  Def.'s sof,

¶ 1.  A handwritten note at the bottom of a book-in card at Delta Regional Unit states "Judge

set bond on 1st appearance by phone."  *Id.* at Ex. C.  The note is signed by Alverna Scales,

an employee of the City of Dermott.  *Id.*

Regardless of when his actual "initial appearance" occurred, Spencer was taken before

Dermott District Judge C.S. "Chuck" Gibson, II on December 11, 2006.  Pltf.'s resp. to def.'s

sof, ¶ 14.  At this appearance a "record of first judicial appearance" was entered and his bond was set at $20,000.  *Id.* at ¶ 15; Def.'s sof, Ex. F.  Spencer was unable to make bond, and was taken back to Delta Regional Unit.  Pltf.'s resp. to def.'s sof, ¶¶ 16, 17.  Spencer then hired legal counsel and on January 5, 2007, a motion to release defendant from custody was filed. Pltf.'s sof, Ex. A., Spencer depo.  On January 10, 2007, Spencer filed a petition for writ of habeas corpus.  *Id.*  A circuit judge signed an order releasing Spencer from custody on January 16, 2007.  *Id.*

All parties agree that at no point during his detention did Spencer file a grievance informing the ADC or any government agency of his prolonged detention.  Pltf.'s resp. to def.'s sof, ¶ 21.  In his deposition, Spencer states that his sister and mother made multiple calls to Chicot County and Dermott officials regarding his detention.  Pltf.'s sof, Ex.A, Spencer depo., 35:2-4, 59:23-25-61:3.  Indeed, on December 8, 2006, his sister contacted Nichols inquiring as to why Spencer had not received an initial appearance.  *Id.* at 35:10-23. That same day, Nichols contacted Dermott officials and alerted them to the situation.  *Id.* at 35:10-23.  Spencer acknowledges that prior to December 8, 2006, his family had never spoken to Nichols.  *Id.* at 94:3-25, 95:1-8.  Neither he nor his family has ever had any contact with White.  *Id.* at 95:8-10.  While housed at the Delta Regional Unit, Spencer had no interaction with Cashion.  Pltf.'s resp. to def.'s sof, ¶ 20.

Spencer brings this claim pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth amendments.  He also alleges violations of the Arkansas Civil Rights Act of 1993.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exist and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.  Further, "[t]he nonmoving party's

allegations must be supported by sufficient probative evidence that would permit a finding

in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497

F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1985).  "[A] genuine issue of material fact exists if:  (1) there is a dispute of

fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is

genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir.

1995).  A dispute is genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court views the evidence and

draws all reasonable inferences in the light most favorable to the nonmoving party.  *Holland*

*v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  It does not weigh the evidence or make

credibility determinations.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III.  DISCUSSION

A.     <u>Sheriff Floyd White and Sheriff Ron Nichols</u>

Spencer's motion for summary judgment as to the liability of White and Nichols is

denied.  Spencer maintains that his detention at the Delta Regional Unit for 43 days without

an initial appearance, by itself, entitles him to summary judgment on the issue of liability as

to White and Nichols.  In response, White and Nichols first argue that summary judgment

is inappropriate because a genuine issue of material fact exists as to when Spencer had his initial appearance.  They point out that "there is evidence that Plaintiff may have had an appearance with a judge by phone on October 30, 2006, and that a bond may have been set for Plaintiff on that date in the amount of $20,000."  Def.'s sof, ¶ 1.  This statement refers to the book-in card with the handwritten note indicating an initial appearance by phone.  *See* Def.'s sof, Ex. C.  Additionally, Spencer's arrest warrant for financial identity fraud indicates a cash bond of $20,000.  Def.'s sof, Ex. A-1.

White and Nichols also assert that even if Spencer's constitutional rights were violated and he was in fact held for 43 days without an initial appearance, a genuine issue of material fact exists as to who was responsible for the constitutional violation.  They point out that Spencer was arrested by Dermott police on city charges and that the Dermott police brought Spencer to the Delta Regional Unit.  White and Nichols maintain that, because Spencer was a city detainee, the city of Dermott was responsible for making sure he was brought before a judge.  They further state that Chicot County would become responsible for bringing Spencer before a judge only if an information was filed by the county prosecuting attorney and that, in this case, that never occurred.  White and Nichols further argue that they had absolutely no involvement with Spencer or his confinement, other than the fact that the sheriff's department permitted the City of Dermott to use one of the county's beds at the Delta Regional Unit.

Spencer's motion for summary judgment is denied.  The contract between Chicot County and the ADC is unclear as to who was responsible for Spencer's initial appearance.

In light of this fact and all of the issues set forth above, it is clear that there are genuine issues of material fact in dispute regarding whether White or Nichols is liable for any damages suffered by Spencer.  Indeed, it is a strain to hold that a reasonable jury could find in favor of Spencer against White or Nichols considering how remotely related White and Nichols are to Spencer's confinement.  White and Nichols, however, failed to move for summary judgment and this court does not make a habit of granting summary judgment *sua sponte*.

B.      Warden Mark Cashion

*1.  Official Capacity Claim*

Cashion's motion for summary judgment as to Spencer's claim against him in his official capacity is granted, and Spencer's motion for summary judgment on his claim against Cashion in his official capacity is denied.

A suit against an individual in his official capacity is viewed as a suit against the entity itself.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Moreover, because Cashion is an employee of the State of Arkansas, a suit against him in his official capacity is a suit against the state.  Indeed, "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *Id.* at 169.

Spencer argues that his suit against Cashion in his official capacity is not barred by sovereign immunity because he is seeking injunctive relief.  While suits against states for prospective injunctive relief are allowed, Spencer seeks back pay or a *per diem* award.  Back

pay and *per diem* awards are not injunctive relief.  These are damages and therefore they are barred by the Eleventh Amendment.

For these reasons, Cashion's motion for summary judgment is granted and Spencer's motion for summary judgment is denied.

## 2.  *Individual Capacity Claim*

Cashion's motion for summary judgment on Spencer's suit against him in his individual capacity is granted, and Spencer's motion for summary judgment against Spencer in his individual capacity is denied.

Cashion moves for summary judgment asserting that he is entitled to qualified immunity and that he did not violate Spencer's constitutional rights.  In support of these arguments, he maintains that he was unaware that Spencer had been held for 43 days without an initial appearance.  Cashion states, and Spencer does not dispute, that Cashion never had any contact with Spencer while Spencer was detained, and Spencer never filed a grievance. Additionally, Cashion points out that Spencer was not held at the Delta Regional Unit under the custody of the State of Arkansas, but that he was held at the Delta Regional Unit under the custody of the City of Dermott.  Further, Cashion argues that, pursuant to the inmate housing agreement with Chicot County and the ADC, the Delta Regional Unit did not have the duty or ability to transport Spencer to an initial appearance.

Spencer responds that as the "holder of the keys" Cashion is responsible for a constitutional violation of his rights regardless of whether he was aware of the violation or not.  In his response he cites to *Hayes v. Faulkner County*, 388 F.3d 669 (8th Cir. 2004) and

*Tilson v. Forrest City Police Dept.*, 28 F.3d 802 (8th Cir. 1994).  Both cases involved § 1983

actions against a "holder of the keys."

Qualified immunity allows "government officials performing discretionary functions

[to be] shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court has

determined that a qualified immunity analysis consists of two steps: (1) a determination of

whether the officer's conduct violated a constitutional right; and (2) a determination of

whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The

order in which these two issues are analyzed is at the discretion of the court.  *See Pearson*

*v. Callahan*, 129 S.Ct. 808, 818 (2009).

Arkansas Rule of Civil Procedure 8.1 provides that "[a]n arrested person who is not

released by citation or by other lawful manner shall be taken before a judicial officer without

unnecessary delay."  Although Arkansas courts have refused to define unnecessary delay as

a specific number of days, they have found that 31 days and 56 days constitute unnecessary

delay.  *See Cook v. State*, 274 Ark. 244, 623 S.W.2d 820 (Ark. 1981); *Richardson v. State*,

283 Ark. 82, 671 S.W.2d 164 (Ark. 1984).  Furthermore, under Arkansas law, this right

exists whether the arrestee is awaiting a probable cause hearing, or an initial appearance

following charges.

Spencer maintains that his right under Arkansas law is constitutionally protected and

therefore his 42 U.S.C. § 1983 claim is proper under the Fifth, Sixth, Eighth, and Fourteenth

amendments.  Spencer is correct that the right to be brought before a judge in a timely

manner pursuant to Ark. R. Crim. P. 8.1 is a clearly established constitutional right.  Indeed,

the Arkansas Supreme Court has held that "Rule 8.1 is designed and has as its purpose to

afford an arrestee protection against unfounded invasion of liberty and privacy."  *Bolden v.

State*, 262 Ark. 718, 724, 561 S.W.2d 281, 284 (Ark. 1978).  Moreover, this district has held

that providing an initial appearance without unnecessary delay, pursuant to Ark. R. Crim P.

8.1, "may avoid the loss of the suspect's job and eliminate the prospect of the loss of income

and the disruption and impairment of his family relationship.  Indeed, these are basic and

fundamental rights which our state and federal constitutions secure to every arrestee."  *Hayes

v. Faulkner County*, 285 F.Supp. 2d 1132, 1137 (E.D. Ark. 2003) (quoting *Bolden*, 262 Ark.

at 724, 561 S.W.2d at 284).

Notwithstanding all of this, when the facts are viewed in the light most favorable to

Spencer, there are no genuine issues of material fact showing that Cashion violated Spencer's

clearly established constitutional rights.  In reaching this conclusion, it is first noted that the

cases relied on by Spencer, *Tilson* and *Hayes*, clearly do not support Spencer's case.  Indeed,

the Eighth Circuit's holding in *Tilson* supports granting summary judgment for all of the

defendants in this case.  This is true because, in *Tilson*, the Eighth Circuit specifically held

that a plaintiff cannot prove that a government official violated his constitutional rights

unless the plaintiff proves that the official had direct involvement in the constitutional

deprivation. *Tilson*, 28 F.3d at 806.  Nothing in the record indicates that Cashion was aware

of Spencer's prolonged detention.  In fact, there is no proof that any of the defendants knew

or had reason to know that Spencer was being detained without receiving an initial appearance before a judge.

Finally, although it is true that the Eighth Circuit in *Hayes* held that the "holder of the keys" was liable, that was partially because the detainee filed grievances and the "holder of the keys" failed to act. *Hayes*, 388 F.3d at 674. It is undisputed that Spencer never filed a grievance while being held in the Delta Regional Unit. Consequently, the facts in this case are distinguished from the facts in *Hayes*.

The record is clear that Cashion had no direct involvement in the failure to bring Spencer before a judge, and had no knowledge of Spencer's prolonged detention without an appearance before a judge. Cashion therefore has qualified immunity because he did not violate Spencer's clearly established constitutional rights. Further, Cashion's motion for summary judgment is granted and Spencer's motion for summary judgment is denied. A discussion of Cashion's third argument in his motion for summary judgment is not necessary.

## IV.  CONCLUSION

For all of the reasons set forth above, Spencer's motion for summary judgment [Doc. No. 26] is denied. Cashion's motion for summary judgment [Doc. No. 29] is granted. And, although it is clear that Spencer's case against White and Nichols is extremely thin (if a case exists at all), summary judgment cannot be granted to White and Nichols because neither party requested it.

IT IS THEREFORE ORDERED this 28th day of December, 2009.

_____
UNITED STATES DISTRICT JUDGE